## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHARLES MENDEZ, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | **No. 17-40076-TSH** |
| COLLETTE GOGUEN, | ) | |
| Respondent. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

### November 14, 2020

Proceeding pro se, Petitioner Charles Mendez ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state court conviction. (Docket #1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and an Order referring the petition to me, (Docket #21), I recommend that Petitioner's petition be denied and dismissed.

I.      FACTUAL BACKGROUND

The facts underlying Petitioner's conviction, summarized below, are set out in the opinion of the Supreme Judicial Court of Massachusetts.  Commonwealth v. Mendez, 476 Mass. 512 (2017).

A.      The Armed Robbery of Ryan Moitoso

On the evening of November 18, 2010, Petitioner and Tacuma Massie (Petitioner's co-defendant) ambushed and robbed Ryan Moitoso.  Id. at 513.  Moitoso believed he was going to meet Petitioner's girlfriend in a parking lot to sell her marijuana.  Id.  Petitioner's girlfriend drove Petitioner and Massie with her to the parking lot, dropping them off near where she and Moitoso planned to meet.  Id.  at 513-14.  While Petitioner's girlfriend and Moitoso spoke, Petitioner and

Massie approached Moitoso from behind and one of them hit Moitoso's head with a hard metal object. Id. at 514. They told Moitoso to empty his pockets, and he turned over his cash and marijuana. Id. Moitoso heard a clicking noise that sounded like a gun being cocked, and then he was allowed to return to his vehicle. Id. Petitioner's girlfriend then drove Petitioner and Massie away. Id.

B.     The Murder of Edward Platts

After the encounter with Moitoso, Petitioner's girlfriend dropped Petitioner and Massie off near a housing complex where Massie had arranged to meet Edward Platts, purportedly to buy marijuana. Id. In reality, Petitioner and Massie intended to rob Platts of $4,000 that Massie knew Platts to be carrying. Id. Prior to Petitioner's encounter with Platts, a witness sitting in a vehicle parked in the housing complex observed two men fitting the description of the Petitioner and Massie walk past him. Id. Platts, who had a puppy with him, parked his vehicle behind the witness's vehicle. Id. The witness observed the same two men walk towards the back of his vehicle. Id. Within seconds, the witness heard a gunshot and an engine accelerate, and felt Platts' vehicle hit the back of his vehicle. Id. The witness then called 911 and told the dispatcher that a man had been shot, and that those involved fled the scene. Id. at 515. Within the housing complex, at the sound of the gun shot a resident looked out her window  and saw a person matching Petitioner's description get out of the passenger side of Platts' vehicle and quickly exit the scene, clutching something to his chest. Id. at 514. Platts was shot at close range behind his right ear as he sat in the vehicle. Id. When Petitioner and Massie were arrested, both were carrying handguns (Massie's was loaded), Massie had more than $4,000 in cash, Petitioner's clothes were stained with the victim's blood, and the police found Platts' puppy in Petitioner's girlfriend's vehicle. Id. at 514. The police also found Petitioner's hat in Platt's vehicle. Id.

C.      The Facts Relating to the Motion to Suppress

After the witness's 911 call, a State police trooper with the violent fugitive apprehension section heard the police transmission of the report.  Id. at 515.  He was travelling nearby in an unmarked police car and plain clothes and headed to the housing complex.  Id.  Approximately two blocks from the complex, he saw a person moving quickly towards a parked vehicle.  Id.  The trooper ran the license plate number and learned that the car was registered to a woman with no criminal history.  Id.  The trooper then arrived at the housing complex and began to patrol, looking for suspicious activity.  Id.  As he patrolled, he saw Petitioner make a "beeline" to a white Honda Civic automobile that was stopped at the curb with the engine running.  Id.  The trooper then saw Petitioner enter the rear passenger side of the car, and noted that the car began to drive away even before Petitioner had fully entered or closed the car door.  Id. at 515-16.  Because the trooper believed there to be a very unusual absence of any other people or a lack of activity on the streets or sidewalks in the housing complex, and because of the vehicle's quick departure, the trooper followed the car.  Id. at 516.  The car drove a "serpentine route," meandering through the city streets.  Id.  While following the car, the trooper reported its license plate number and learned that the individual associated with the address of the vehicle's owner had "lots of violence" in his record including a firearms charge, and pending drug charges.  Id.

The trooper then saw that there were two people seated in the back and he called for backup. Id.  Approximately four miles away from the housing complex, the driver of the vehicle stopped in front of a three-family home but kept the motor running.  Id.  The trooper stopped his vehicle in the middle of the street and waited for back up.  Id.  Between fifteen and thirty seconds later, the Petitioner and Massie got out of the vehicle and turned to face the trooper.  Id.  They were speaking to each other and both had their hands in their jacket pockets.  Id.  Fearing for his safety, the trooper

got out of his vehicle, showed his badge, and said "Police, don't move." Id.  The two men fled in opposite directions. Id.  Petitioner initially ran towards the trooper, but soon returned to the white vehicle, getting in and telling the driver to "take off." Id.  The trooper drew his weapon and ordered the driver, Petitioner's girlfriend, to shut off the motor, which she did. Id. at 516-17.  When another officer arrived, the police recovered a handgun tucked in the Petitioner's waistband. Id. at 517.  At the same time, a third officer saw Massie, who was less than a block away from the white vehicle, running with his hand in his pocket. Id.  The officer chased him and ordered him to stop. Id.  Massie did not comply, but he was apprehended carrying a loaded semiautomatic pistol and cash. Id.

## II.     PROCEDURAL HISTORY

On January 7, 2011, a grand jury returned four indictments against petitioner for his encounter with Platts: (1) first degree murder[1] (2) armed assault with intent to kill; (3) assault and battery by means of a dangerous weapon; and (4) unlawful possession of a firearm.  (A. 1-2, 4).[2] On February 11, 2011, a grand jury returned two indictments against Petitioner for armed robbery and assault with a dangerous weapon for his encounter with Moitoso.  (A. 137, 139).

On March 8, 2012, Petitioner moved to suppress the firearm, cash, and ammunition seized during the trooper's warrantless stop.  (A. 5, 333).  The motion judge issued her findings of fact, rulings of law, and order denying Petitioner's motion on December 4, 2012.  Commonwealth v. Mendez, Nos. 2011-0018, 2011-0019, 2012 WL 12950441 (Mass. Super. Dec. 4, 2012).  On

---

[1] Petitioner was charged on theories of both felony murder and deliberate premeditation.  Mendez, 476 Mass. at 513 n.2.

[2] On September 8, 2017, Respondent filed four appendix volumes as a supplement to her answer in this matter.  (Docket #14).  References to the appendix shall be cited as A. [page number].

January 11, 2013, the same motion judge issued an order allowing joinder of the Moitoso and Platts cases for trial. (A. 111-23).

On September 27, 2013, a jury found Petitioner guilty of four offenses: (1) first degree murder (2) armed assault with intent to kill; (3) assault and battery by means of a dangerous weapon; and (4) unlawful possession of a firearm. (A. 8). He was sentenced to life in prison without the possibility of parole on the murder conviction, with concurrent prison sentences on the remaining convictions. (A. 8-9). That same day, Petitioner filed a notice of appeal. (A. 9). In his appeal, the defendant raised three issues: (1) that the judge erred in denying the motion to suppress; (2) that the trial judge abused her discretion and denied his right to a fair trial by granting the Commonwealth's motion to join the Moitoso and Platts offenses for trial; and (3) that the prosecutor's closing argument constituted reversible error where the prosecutor said that the Petitioner tailored his testimony to conform to the evidence he heard during trial, thereby impermissibly burdening the Petitioner's right to be present for the Commonwealth's case and to confront the witnesses against him. (A. 26). In addition, Petitioner filed a Moffett brief pursuant to Commonwealth v. Moffett, 383 Mass. 201 (1981), in which he asserted (1) a key witness against Petitioner in the Moitoso case was unreliable; (2) counsel was ineffective because he was not prepared to present a legal argument on the motion for joinder; (3) the Commonwealth improperly "staged a car at the view" without giving the defense counsel an opportunity to review it; and (4) the trial judge improperly refused to remove a juror who said she had formed an opinion before deliberations began.[3] (A. 81-85). The SJC affirmed the petitioner's convictions on February 22, 2017. Mendez, 476 Mass. at 513.

---

[3] In Commonwealth v. Moffett, the SJC stated that, where a defendant, despite appointed counsel's attempts to dissuade him, insists on pursuing an unsupported contention, it was "preferable that counsel present the contention succinctly in the brief in a way that will do the least harm to the defendant's cause." Commonwealth v. Moffett, 383 Mass. 201, 208 (1981). "If appointed counsel, on grounds of professional ethics deems it absolutely necessary to

III.     PETITIONER'S HABEAS PETITION AND STANDARD OF REVIEW

Petitioner filed the instant habeas petition on May 18, 2017, asserting four grounds for relief: (1) that the judge erred in denying the motion to suppress the evidence seized as a result of the warrantless stop; (2) that the trial judge abused her discretion and denied his right to a fair trial by granting the Commonwealth's motion to join the Moitoso and Platts offenses for trial; (3) that the prosecutor's closing argument constituted reversible error where the prosecutor said that the Petitioner tailored his testimony to conform to the evidence he heard during trial, thereby impermissibly burdening the Petitioner's right to be present for the Commonwealth's case and to confront the witnesses against him; and (4) arguments under <u>Commonwealth v. Moffett</u>, in which he asserted: (i) a key witness against Petitioner in the Moitoso case was unreliable; (ii) counsel was ineffective because he was not prepared to present a legal argument on the motion for joinder; (iii) the Commonwealth improperly "staged a car at the viewing without giving the defense counsel an opportunity to review it; and (iv) the trial judge improperly refused to remove a juror who said she had formed an opinion before deliberations began.  (Docket #1).

To prevail on any one of these grounds for relief, "[u]nder the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), [Petitioner] must show that the challenged state court adjudication was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or that the decision 'was based on an unreasonable determination of the facts.'"  <u>Pena v. Dickhaut</u>, 736 F.3d 600, 603 (1st Cir. 2013) (quoting 28 U.S.C. § 2254(d)).  This "highly deferential" standard of review "requires the petitioner to 'show that the state court's ruling on the claim being presented in federal court

---

dissociate himself or herself from purportedly frivolous points, counsel may so state in a preface to the brief."  <u>Id.</u> Where such a preface is included, counsel must inform the defendant that he may present additional arguments to the appellate court within thirty days.  <u>Id.</u>  Mendez's counsel appropriately followed this procedure.  (A. 81).

was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" Id. (quoting Burt v. Titlow, 571 U.S. 12, 20-21 (2013)) (alteration in original).

"Clearly established federal law" under § 2254(d)(1) refers to the "governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision" and must be "holdings, as opposed to the dicta." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003) (internal quotation omitted). A state court decision is "contrary to" existing Supreme Court precedent if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court but reaches a result different from Supreme Court precedent. Dagley v. Russo, 540 F.3d 8, 16 (1st Cir. 2008) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"[A] state court adjudication constitutes an unreasonable application 'if the state court identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Hensley v. Roden, 755 F.3d 724, 731 (1st Cir. 2014) (quoting Abrante v. St. Amand, 595 F.3d 11, 15 (1st Cir. 2010)). State court applications of federal law must be more than "incorrect or erroneous" to merit habeas relief; they must be "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520 (2003).

When determining whether the state court's decision was based on an unreasonable determination of the facts, reviewing courts "may not characterize . . . state-court factual determinations as unreasonable 'merely because [they] would have reached a different conclusion in the first instance.'" Brumfield v. Cain, 576 U.S. 305, 313-14 (2015) (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)). Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct." This presumption applies to findings of historical, basic or primary facts – "facts in the sense of a recital of external events and the

credibility of their narrators." <u>Coombs v. Maine</u>, 202 F.3d 14, 18 (1st Cir. 2000) (quoting <u>Bryson v. Ward</u>, 187 F.3d 1193, 1211 (10th Cir. 1999)).  The petitioner may rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Review under § 2254(d)(2) "is limited to the record that was before the state court."  <u>Garuti v. Roden</u>, 733 F.3d 18, 23 (1st Cir. 2013) (quotation and alteration omitted).

V.    ANALYSIS

A.    Motion to Suppress

Petitioner argues that the state trooper lacked reasonable suspicion to stop the Petitioner and that the subsequent admission of evidence seized as a result of the warrantless stop violated his Fourth Amendment rights.  (Docket #17 at 10-11).  Federal habeas relief is generally not available for Fourth Amendment claims.  <u>See</u> <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976).  In <u>Stone</u>, the Supreme Court held "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." [4]  <u>Id.</u>; <u>see</u> <u>Sanna v. DiPaolo</u>, 265 F.3d 1, 8 (1st Cir. 2001) ("<u>Stone</u> thus stands for the proposition that a federal habeas court ordinarily cannot revisit a state court's disposition of a prisoner's Fourth Amendment claims.").  A defendant has had a "full and fair opportunity to litigate" if "the state has made available to defendants a set of procedures suitably crafted to test for possible Fourth Amendment violations."  <u>Sanna</u>, 265 F.3d at 9.  "So long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of such a set of

---

[4] An exception exists for Sixth Amendment claims arising from Fourth Amendment violations.  <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986).  A defendant may "obtain habeas relief where trial counsel's incompetent handling of a meritorious Fourth Amendment claim deprives a defendant of a Sixth Amendment right to effective assistance of counsel and a reasonable probability exists that the trial's outcome would have been different."  <u>Lewis v. Gelb</u>, No. 10-11628-FDS, 2014 WL 757141, at *14 (D. Mass. Feb. 21, 2014).  In the instant case, Petitioner has not raised an ineffective assistance of counsel issue with respect to his Fourth Amendment claim.

procedures, a federal habeas court lacks the authority, under <u>Stone</u>, to second-guess the accuracy of the state court's resolution of those claims." <u>Id.</u>

Petitioner's argument fails under <u>Stone</u> because he had a full and fair opportunity to litigate his Fourth Amendment claim in state court. Petitioner received an evidentiary hearing on the motion to suppress the evidence seized as a result of the warrantless stop by the state trooper. <u>Mendez</u>, 2012 WL 12950441, at *1. After hearing witnesses and reviewing the evidence, the trial court issued a written opinion denying Petitioner's motion because it concluded that the state trooper had reasonable suspicion to stop the vehicle. <u>See id.</u> Petitioner then raised his claim on direct appeal to the SJC. <u>Mendez</u>, 476 Mass. at 515-19. The SJC affirmed the trial court's denial of the motion to suppress, finding that "the trooper clearly had reasonable suspicion for the stop." <u>Id.</u> at 517. It is clear that this process at the trial and appellate level was sufficient to constitute a "full and fair litigation" of the claim. <u>See</u> <u>Sanna</u>, 265 F.3d at 8 (holding that an evidentiary hearing, written opinion by the superior court judge, and a direct appeal to the SJC was sufficient to find full and fair litigation of Fourth Amendment claim); <u>Pignone v. Sands</u>, 589 F.2d 76, 80 (1st Cir. 1978) (holding that two hearings at the trial level and two resulting appeals constituted an opportunity for full and fair litigation even where the trial court applied incorrect legal principles). Thus, this court lacks authority to review the state court's resolution of Petitioner's Fourth Amendment claim under <u>Stone</u> and Petitioner is not entitled to federal habeas relief on this ground.

B.     Motion to Join

Petitioner argues that the trial judge abused her discretion and denied his right to a fair trial by granting the Commonwealth's motion to join the Moitoso and Platts offenses for trial. (Docket #17 at 11-13). Petitioner challenged the trial court's joinder decision on direct appeal, and the SJC adjudicated the challenge on its merits. <u>Mendez</u>, 476 Mass. at 519-20.

As an initial matter, it is unclear whether there is clearly established federal law regarding severance of claims.  See Hernandez v. Massachusetts, 234 F. Supp. 3d 316, 326 (D. Mass. 2017).  In United States v. Lane, the Supreme Court noted in a footnote that "[i]mproper joinder does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." United States v. Lane, 474 U.S. 438, 446 n.8 (1986).  Courts are divided on whether the foregoing proposition should be characterized as dicta rather than a formal holding.  Compare Collins v. Runnels, 603 F.3d 1127, 1132 (9th Cir. 2010) (finding that footnote 8 is merely a comment rather than "clearly established federal law"), with Herring v. Meachum, 11 F.3d 374, 377 (2d Cir. 1993) (applying the Lane standard to habeas review of a denial of a motion to sever).  If footnote 8 is considered dicta, then it would not be "clearly established federal law."  See Lockyer, 538 U.S. at 71-72.

Despite the divergence among courts, this court has looked to Lane in considering joinder in the habeas context.  See Cormier v. Saba, 953 F. Supp. 2d 274, 287 (D. Mass. 2013) ("[C]learly established federal law simply states that misjoinder may be a constitutional violation if it prevents a defendant from obtaining a fair trial"); Hernandez, 234 F. Supp. 3d at 326 (agreeing with the court's treatment of Lane in Cormier but noting that, in light of the divergence of approaches amongst the courts, "I will for present purposes assume that Lane is 'clearly established' federal law"); Tavares v. Russo, No. 15-13188-GAO, 2019 WL 1409291, at *3 (D. Mass. Mar. 27, 2019) (applying Lane as "clearly established" federal law).  Thus, the undersigned will for present purposes assume that Lane is "clearly established" federal law and examine whether the joinder of claims resulted in prejudice so great as to deny Petitioner's constitutional right to a fair trial.

In reviewing Petitioner's claim for misjoinder, the SJC relied on Massachusetts law.  See Mendez, 476 Mass. at 519-20.  Massachusetts cases on this issue, including those cited by the SJC, advance the same general principle – that a constitutional violation from misjoinder requires a showing of prejudice – presented in Lane.  See, e.g., Commonwealth. v. Hernandez, 473 Mass. 379, 393 (2015) ("To succeed on a claim of misjoinder, the defendant 'bears the burden of demonstrating that the offenses were unrelated, and that prejudice from joinder was so compelling that it prevented him from obtaining a fair trial.'") (quoting Commonwealth v. Pillai, 445 Mass. 175, 180 (2005)); see also Hernandez, 234 F. Supp. 3d at 326 (finding that Massachusetts case law stands for the basic proposition set out by the Supreme Court in Lane).  Although the SJC did not cite federal law, it considered the merits of Petitioner's claim under a standard essentially identical to that of federal law, concluding that the Petitioner was not unfairly prejudiced by the joinder. See Mendez, 476 Mass. at 519-20.

Under Massachusetts Rules of Criminal Procedure, "[j]oinder 'shall' be allowed when a defendant is charged with two or more related offenses unless the trial judge 'determines that joinder is not in the best interests of justice.'"  Hernandez, 473 Mass. at 393 (quoting Mass. R. Crim. P. 9(a)(3)).  "For purposes of joinder, offenses are related if they are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan."  Id.  In determining whether the charges with respect to Moitoso were related to the charges with respect to Platts, the SJC considered the following factors: (1) factual similarities; (2) closeness of time and locations; and (3) whether evidence of the other offenses would be admissible in separate trials on each offense.  Mendez, 476 Mass. at 519 (quotation omitted).

The SJC noted that for both offenses, a jury could have found that the defendants set up meetings with the victims on the pretext of buying marijuana and instead robbed them using a gun. Mendez, 476 Mass. at 519.  The SJC also observed that both robberies took place within less than one hour of each other and within a ten-minute drive of each other.  Id.  Furthermore, while acknowledging that prior bad acts are inadmissible to show propensity to commit other crimes, the SJC determined that evidence of the robbery of Platts would be admissible as relevant evidence reflective of a common scheme or pattern in a trial of the robbery of Moitoso, and vice versa.  Id. at 20.  Based on the factual similarities and closeness of time and location of the two robberies as well as the likely introduction of evidence of each robbery in both trials if held separately, it was reasonable for the SJC to conclude the offenses were sufficiently related to make joinder appropriate.

Finally, the SJC determined that Petitioner failed to show that he was unfairly prejudiced by the joinder.  Id.  The SJC took into account the fact that the trial judge (1) asked the venire during voir dire to comply with an instruction that evidence of each robbery be considered independently, and that the evidence of one not be taken as proof of propensity to commit the other; and (2) instructed the jury prior to deliberations to refrain from using evidence of the two robberies to prove that the defendants had a propensity to commit the crimes of armed robbery or murder and that they were to consider each episode separately.  Id.  Given that "the jury are presumed to follow the judge's instructions," the SJC concluded that Petitioner failed to show that the joinder of the offenses resulted in any prejudice.  Id. (quoting Commonwealth v. Andrade, 468 Mass. 543, 549 (2014)).  Accordingly, the undersigned finds that Petitioner is not entitled to relief on this ground.

C.      Prosecutor's Closing Argument

Petitioner claims that the prosecutor's statements during closing argument suggesting that Petitioner had tailored his testimony to the evidence impermissibly burdened his rights to be present for the Commonwealth's case and to confront the witnesses against him.  (Docket #17 at 13).  The SJC summarized the relevant facts as follows:

> During direct examination, Mendez admitted to assaulting and robbing Moitoso. He testified that the plan then was to meet the victim at the housing development and purchase approximately twelve pounds of marijuana from him.  Mendez further testified that while he was in the victim's vehicle the two men had a disagreement, the victim pulled out a gun, and, in a struggle for the gun, Mendez shot the victim in self-defense.  He went on to say that after the shooting, he got out of the vehicle with the gun, and then returned for his hat (which had fallen off) but instead grabbed the puppy.  He then met up with Massie, who had been waiting with the over $4,000 in cash they had saved to buy the marijuana.

> On cross-examination, Mendez testified that his initial account to police after his arrest was not consistent with his trial testimony because he had lied to the investigators on the night of the victim's death.  Among other things, he told police that because of his drug use, he was unable to recall the events of the evening, and specifically did not remember going to a housing complex, carrying a gun, or being involved in a shooting.

> In his closing argument, the prosecutor suggested that Mendez conformed his testimony to the Commonwealth's evidence:

> "[W]hen you talk about the night when he got caught with the gun on him, there's a puppy, and he's brought down to the station, oh, I lied about everything.  Of course he lied about everything because he didn't know what we knew, the police.  And of course, then as the evidence is developed, he now fits it all in a nice little package for you . . . Evidence is what is said, not then what you want to try to shape it at the end."

Mendez, 476 Mass. at 520-21 (emphases in original).

1. Procedural Default

Respondent argues that Petitioner procedurally defaulted his challenge to the prosecutor's closing argument because he failed to object on that basis at trial.  (Docket #20 at 21).  "Federal habeas review of the merits of a claim is precluded if there is an independent and adequate state

law ground supporting the state court's decision." Lee v. Corsini, 777 F.3d 46, 54 (1st Cir. 2015). "A state procedural rule is adequate to preclude federal merits review 'so long as the state regularly follows the rule and has not waived it by relying on some other ground.'" Id. (quoting Jewett v. Brady, 634 F.3d 67, 76 (1st Cir. 2011)). The First Circuit has "held, with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts." Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010).

The SJC expressly noted that Petitioner had not objected to the closing argument at trial, and thus reviewed the claim "to determine if there was error or misconduct, and if so, whether it created a substantial likelihood of a miscarriage of justice.[5] Mendez, 476 Mass. at 521. Such discretionary review by a state court does not amount to a waiver of the state's contemporaneous objection rule. See Tart v. Massachusetts, 949 F.2d 490, 496 (1st Cir. 1991) (stating that the SJC's miscarriage of justice review does not by itself negate the state's contemporaneous objection rule). Consequently, the SJC's finding of procedural default forecloses federal habeas review of Petitioner's claim, unless Petitioner can demonstrate "cause for the default and prejudice stemming therefrom, or, alternatively, unless . . . [P]etitioner can show that a refusal to consider the merits of the constitutional claim will work a miscarriage of justice." Burks v. Dubois, 55 F.3d 712, 716 (1st Cir. 1995).

The cause necessary to excuse a procedural default in the habeas context "must relate to an objective factor, external to the defense, that thwarted (or at least substantially obstructed) the

---

[5] "Where an objection is properly preserved, [the SJC] evaluate[s] the admission of constitutionally proscribed evidence to determine whether it was harmless beyond a reasonable doubt[;]" "[i]f the defendant's constitutional objection was not preserved, [the SJC] still review[s] the claim to determine whether there was a substantial risk of a miscarriage of justice or, in the case of the SJC's review in [a capital case], a substantial likelihood of a miscarriage of justice." Commonwealth v. Nardi, 452 Mass. 379, 394 (2008) (internal citations omitted).

efforts of the defendant or his counsel to obey the state's procedural rule." Id. at 716-17. If a petitioner establishes cause, he must still establish actual prejudice to obtain relief, i.e., that the errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original). Finally, for habeas purposes, the miscarriage of justice standard "means that petitioner must establish actual innocence." Simpson v. Matesanz, 175 F.3d 200, 210 (1st Cir. 1999).

In the instant case, Petitioner does not allege actual innocence and has failed to satisfy the elements required to excuse his procedural default. Petitioner appears to rely on his contention that his counsel was ineffective to establish cause.[6]  (Docket #17 at 14).

The undersigned addresses this claim de novo as the SJC did not consider possible ineffective assistance of counsel with respect to the prosecutorial misconduct claim. See Lynch v. Ficco, 438 F.3d 35, 48 (1st Cir. 2006).

A defendant alleging that his Sixth Amendment right to counsel was violated must satisfy the standard articulated in Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a conjunctive, two-step framework for evaluating ineffective assistance of counsel claims. See Ouber v. Guarino, 293 F.3d 19, 26 (1st Cir. 2002) ("The Strickland principles for deciding ineffective assistance of counsel claims are 'clearly established' for purposes of the AEDPA"). According to that framework:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the

---

[6] In his brief, Petitioner states, "although Mr. Mendez's counsel did not object to this portion of the prosecutor's closing, no reasonable tactical decision could exist for failing to object to an argument that, well established Massachusetts precedent prohibits." (Docket #17 at 14). This echoes the argument made by Petitioner to the SJC. (A. 80). Although Respondent argues that Petitioner did not expressly raise an ineffective counsel issue with respect to his prosecutorial misconduct claim, (Docket #20 at 24-25), the undersigned will proceed on the assumption that such an argument was raised.

defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland, 466 U.S. at 687.

Petitioner contends that no reasonable tactical decision could exist for counsel's failure to object to the prosecutor's closing argument because the prosecutor's remarks suggesting that Petitioner had tailored trial testimony to the evidence were prohibited by Massachusetts law. (Docket #17 at 14).  The undersigned disagrees and finds no Strickland error in counsel's failure to object to the closing argument.  "[T]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688) (internal quotation marks omitted).  The question is "whether, given the particular facts of this case, [counsel] fell below the constitutional standard of competence." Dugas v. Coplan, 428 F.3d 317, 328 (1st Cir. 2005).  By voluntarily testifying at trial, Petitioner put his credibility at issue.  Indeed, "when a defendant takes the stand, his credibility may be impeached and his testimony assailed like that of any other witness."  Portuondo v. Agard, 529 U.S. 61, 69 (2000).  "[A]rguing credibility to the jury . . . is the preferred means of counteracting tailoring of the defendant's testimony."  Id. at 69-70.  Thus, the prosecutor's statements did not rise to a level of misconduct that rendered counsel's failure to object an ineffective assistance of counsel.  Moreover, an objection risked highlighting the tension between Petitioner's post-arrest denial of having recall of the murder and his trial testimony.  Hence, it was entirely reasonable and within the constitutional standard of competence for Petitioner's counsel not to object to the statements.

Because Petitioner has not shown a constitutionally deficient performance, and therefore cause, the court need not consider whether he has shown actual prejudice.  Strickland, 466 U.S. at

697 ("there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one").  For the sake of completeness, however, the undersigned addresses the prejudice prong.  To establish prejudice, the Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "[I]t is not enough to show that the errors has some conceivable effect on the outcome[,] [n]or is it required, however, that the defendant prove that the errors were more likely than not to have affected the verdict."  Gonzalez-Soberal v. United States, 244 F.3d 273, 278 (1st Cir. 2001) (quotation omitted).  Petitioner fails to show that he was prejudiced by counsel's failure to object to the prosecutor's statements.  Even if Petitioner's counsel had objected to the closing argument and successfully had the relevant portions of the prosecutor's statements stricken from the record, the jury could still reasonably have doubted Petitioner's credibility based on the evidence at trial, including the inconsistencies between his post-arrest statement and trial testimony.  The undersigned is unpersuaded that there is a reasonable probability that, in the face of the evidence, striking the prosecutor's statements would have been enough to cast doubt on the jury's finding that Petitioner had committed the offenses for which he was convicted.

Petitioner has failed to demonstrate ineffective assistance of counsel as cause for his procedural default.  Nor has he shown that refusal to consider the merits of his claim will result in a miscarriage of justice.  Therefore, Petitioner is not entitled to relief on this ground.

2.  Review of the SJC's decision

Even assuming, arguendo, that Petitioner had not procedurally defaulted his claim of prosecutorial misconduct, Petitioner's claim fails under section 2254(d)'s deferential standard. Improper comments by the prosecutor can violate a defendant's constitutional rights if they

impermissibly burden a specific constitutional guarantee.  See Griffin v. California, 380 U.S. 609, 615 (1965) (prosecutor's comments on the defendant's failure to testify violated the self-incrimination clause of the Fifth Amendment); Caldwell v. Mississippi, 472 U.S. 320, 328-29 (1985) (prosecutor's statements suggesting that the jury was not the final arbiter of determining the appropriateness of a death sentence violated the Eighth Amendment right against cruel and unusual punishment).  On the other hand, as noted above "when a defendant takes the stand, his credibility may be impeached and his testimony assailed like that of any other witness." Portuondo, 529 U.S. at 69 (rejecting claim that prosecutor's argument impermissibly burdened defendant's Fifth and Sixth Amendment rights to be present during trial and confront his accusers) (quotation omitted); see also United States v. Romero-Aguilar, 968 F.2d 1210 (Table), 1992 WL 164713, at *1 (1st. Cir. 1992) (challenged statements in rebuttal were an acceptable "attack [on] defendant's credibility using legitimate inferences based on the evidence admitted at trial").  Thus, under federal law, a prosecutor may cast doubt on a testifying defendant's credibility without violating the defendant's rights to be present during trial and confront witnesses.

The SJC reasonably applied this legal framework in rejecting Petitioner's claim.  Although it did not cite federal law, the SJC observed that under Massachusetts law, "[a] prosecutor may, if there is a basis in the evidence introduced at trial, attack the credibility of a defendant on the ground that his testimony has been shaped or changed in response to listening to the testimony of other witnesses."  Mendez, 476 Mass. at 521 (quoting Commonwealth v. Gaudette, 441 Mass. 762, 767 (2004)).  The SJC reasoned that because the Petitioner had "made pretrial statements to police that were different from his trial testimony, the prosecutor had a basis in the evidence for pointing out that his trial testimony did not match his prior statements to police and, instead, conformed to the Commonwealth's evidence."  Mendez, 476 Mass. at 521.  The SJC concluded that, given the nature

of Petitioner's pretrial statements, the prosecutor "fairly commented on 'the quality of the evidentiary picture the defendant was trying to paint.'"   Id. at 522 (quoting Commonwealth v. Moore, 408 Mass. 117, 132 (1990)).   Thus, the SJC's resolution of Petitioner's claim did not amount to an unreasonable application of federal law as determined by the Supreme Court in Portuondo v. Agard.   Furthermore, the SJC reasonably held that the prosecutor's argument appropriately commented on Petitioner's credibility based on the evidence at trial; Petitioner has failed to rebut these findings by clear and convincing evidence.

D.   Moffett Brief Claims

At the SJC, the Petitioner filed a Moffett brief raising four arguments : (i) a key witness against Petitioner in the Moitoso case was unreliable; (ii) counsel was ineffective because he was not prepared to present a legal argument on the motion for joinder; (iii) the Commonwealth improperly "staged a car at the viewing without giving defense counsel an opportunity to review it; and (iv) the trial judge improperly refused to remove a juror who said she had formed an opinion before deliberations began.  (A. 81-85).  These four claims were raised in Ground Four of his petition. (Docket #1 at 10).  Respondent argues that the Petitioner has waived these arguments by failing to develop them in his memorandum of law.  (Docket #20 at 28-29).  The Respondent also argues that Petitioner's claims with respect to the unreliable witness and the view are subject to dismissal because neither alleges a violation of the constitution or federal law.  (Id. at 29).

1.  Witness Credibility

In the first of his Moffett brief arguments, Petitioner states that a key witness against Petitioner for the Moitoso charges was not credible as his testimony conflicted with his past statements.  (Docket #17 at 16).  Petitioner then cites to the challenged testimony and concludes that its admission violated his Massachusetts Declaration of Rights, Article Twelve.  (Id.).  Even

if the admission of the challenged testimony did violate Petitioner's rights under Article Twelve, it would not entitle him to habeas relief in the absence of evidence that the admission was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." <u>See</u> 28 U.S.C. § 2254(d).  Petitioner makes no such allegation, precluding habeas relief on this ground.

   2.  Ineffective Assistance of Counsel

   In the second of his <u>Moffett</u> brief arguments, citing to a transcript on the motion to suppress, Petitioner asserts that his counsel was constitutionally ineffective when he said he was not prepared to present legal arguments on the motion for joinder.  (Docket #17 at 17).  Petitioner provides no analysis of the factors considered under <u>Strickland</u>.  In the First Circuit "issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned." <u>Ryan v. Royal Ins. Co. of Am.</u>, 916 F.2d 731, 734 (1st Cir. 1990).  This principle applies equally in the context of a petition for a writ of habeas corpus.  <u>See</u> <u>Glacken v. Dickhaut</u>, 585 F.3d 547, 551 (1st Cir. 2009).  Therefore, the undersigned finds that this argument is waived.  <u>See</u> <u>Leng v. Gelb</u>, No., 2016 WL 7428221, at *6 (D. Mass. Dec. 22, 2016) (finding ineffective assistance of counsel claim waived where petitioner had failed to offer any analysis of the <u>Strickland</u> standard).

   Even if not waived, however, the argument fails to meet the <u>Strickland</u> standard which requires a showing that counsel's performance was deficient and that the deficient performance prejudiced the defense.  <u>Strickland</u>, 466 U.S. at 687.  At a hearing on the motion to suppress on October 30, 2012, the court inquired, while waiting for exhibits to come up, whether the schedule of the case should be discussed.  (A. 741).  Petitioner's counsel, who had just come into the case, did indeed say that he was not in a position to comment on the motion to join.  (A. 742).  However,

the court clarified that it was not seeking argument on the motion at that time, but rather suggesting that argument on the motion be scheduled for a date in the future.  (Id.).  A hearing was scheduled for November 30, 2012.  Hence, no prejudice inured to Petitioner.

### 3.  Improper View

In his third Moffett brief claim, Petitioner states that the Commonwealth improperly staged a car at the view without giving defense counsel an opportunity to review or properly prepare for it.  (Docket #17 at 17).  Petitioner then cites to that portion of the trial transcript where the Commonwealth addressed the jurors at the view.  Petitioner fails to cite to any violation of the Constitution or of federal law.  Therefore, he is not entitled to relief on this basis.  See 28 U.S.C. § 2254(d).

### 4.  Refusal to Remove Juror

In the fourth of his Moffett brief claims, Petitioner asserts that his Sixth Amendment rights were violated when the trial judge improperly refused to remove a juror who had formed an opinion prior to deliberations.  (Docket #17 at 18).  Petitioner cites to the transcript of his attorney's argument to the trial court seeking the juror's removal, in which counsel argued that the juror's question to defense counsel at the view of the crime scene about whether the security cameras defense counsel had pointed out were working on the day in question demonstrated that the juror had a mindset that was arguably pro-prosecution and that she had already formed an opinion about the case.  (Id.; A. 1390-91).  The trial judge denied the request noting that the comment did not reasonably suggest prejudice.  (A. 1393).  The trial judge then instructed the jury that a defendant has no obligation to present any evidence under any circumstances.  (A. 1394).  Petitioner provides no analysis of the issue, only citing to trial transcript; therefore, the claim is waived.  See Glacken v. Dickhaut, 585 F.3d at 551.

Even were the claim not waived, Petitioner would not be entitled to relief.  The Sixth Amendment guarantees a criminal defendant's right to a fair trial and an impartial jury.  U.S. Const. amend VI.  The determination of whether an individual juror is impartial is to be made by the trial judge.  Murphy v. Thompson, 497 F. Supp. 2d 47, 53 (D. Mass. 2007).  The finding on impartiality "is plainly one of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed."  Patton v. Yount, 467 U.S. 1025, 1036 (1984).  Hence, "the statutory presumption of correctness applies to the state courts' determination of impartiality when the issue is raised in the context of a habeas petition."  Murphy, 497 F. Supp. 2d at 54.  There is no evidence in the record to support avoiding this presumption of correctness.

VI.   CONCLUSION

For the foregoing reasons, I hereby RECOMMEND that the Petitioner's petition for a writ of habeas corpus (Docket #1) be DENIED and that the instant matter be DISMISSED.[7]

/s/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE

---

[7] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).